**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JERMAINE WALKER,          :
                          :          No. 09-5325 (ES)
          Petitioner,  :
                          :
          v.            :          **OPINION**
                          :
MICHELLE RICCI, et al.,   :
                          :
          Respondents.  :

**APPEARANCES:**

     JERMAINE WALKER, <u>Pro</u> <u>Se</u> Petitioner
     # 280752/SBI # 949141B
     New Jersey State Prison
     P.O. Box 861
     Trenton, New Jersey 08625

     JOHN EDWIN ANDERSON, ESQ.
     ESSEX COUNTY PROSECUTOR'S OFFICE
     50 West Market Street
     Newark, New Jersey 07601
     Counsel for Respondents

**SALAS**, District Judge

     Petitioner Jermaine Walker ("Petitioner"), a convicted state prisoner presently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about April 23, 1996. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

A. Procedural History

On or about June 27, 1995, an Essex County Grand Jury indicted Petitioner and co-defendant Andre Williams, on a sixteen-count (16) indictment as follows: (Count One) second-degree conspiracy to commit robbery, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; (Counts Two through Five) first-degree robbery, in violation of N.J.S.A. 2C:15-1; (Count Six) first-degree felony murder, in violation of N.J.S.A. 2C:11-3a(3); (Count Seven) first-degree murder, in violation of N.J.S.A. 2C:11-3; (Count Eight) first-degree attempted murder, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; (Count Nine) second-degree aggravated assault, in violation of N.J.S.A. 2C:12-1b(1); (Counts Ten and Twelve) third-degree unlawful possession of a firearm, in violation of N.J.S.A. 2C:39-5b; (Counts Eleven and Thirteen) second-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a; (Count Fourteen) third-degree possession of an assault firearm, in violation of N.J.S.A. 2C:39-5f; (Count Fifteen) third-degree possession of a controlled dangerous substance ("CDS")(cocaine), in violation of N.J.S.A. 2C:35-10a; and (Count Sixteen) possession of a CDS (cocaine) with the intent to distribute, in violation of N.J.S.A. 2C:35-5b(2). State v.

Walker, No. 95-06-2295-I, 2007 WL 4258335, at *1 (N.J. Super. Ct. App. Div. Dec. 6, 2007).

Counts One through Twelve were tried before the Honorable Harold W. Fullilove, J.S.C., and a jury, in March 1996. Id. During trial, Judge Fullilove dismissed Count Four (the charge of robbery of victim Darlene Pollenitz), and based the felony murder charge on the robbery of Alberdeen Allen (Count Five of the Indictment), pursuant to the motion of the State. Id. The jury acquitted Petitioner on Counts Seven and Eight (murder of Pollenitz and attempted murder of Alford), and found Petitioner guilty of the remaining counts. Id. Pursuant to a plea agreement, Petitioner pled guilty to Counts Twelve, Fourteen and Fifteen, and the court dismissed Counts Thirteen and Sixteen. Id.

Petitioner was sentenced to an aggregate term of 45 years, with 30 years parole ineligibility. Id. A judgment of conviction was entered on or about April 23, 1996. (Resp't Ex. 3).[1]

Petitioner thereafter filed a direct appeal. On or about June 30, 1999, the Superior Court of New Jersey reversed Petitioner's convictions for the robbery and aggravated assault

_____

[1] The State provided the relevant state court record with a list of exhibits. (See D.E. No. 18).

3

counts of Paula Alford (Counts Two and Nine), but otherwise affirmed the judgment of conviction. (D.E. No. 18-6, State v. Walker, No. A-2465-96T4, slip op. at 26 (N.J. Super. Ct. App. Div. June 30, 1999)). The Supreme Court of New Jersey denied certification on November 9, 1999. (D.E. No. 19-2, Dec.).

Petitioner filed his first state petition for post-conviction relief ("PCR") on or about December 27, 1999.[2] A hearing on the PCR petition was conducted on January 6, 2006.[3] Walker, 2007 WL 4258335, at *2. On March 8, 2006, the state PCR judge denied the PCR petition without granting an evidentiary hearing. Id. Petitioner appealed from denial of his state PCR petition. On December 6, 2007, the Appellate Division affirmed. Id. at 3. The Supreme Court denied certification on March 25, 2008. (D.E. No. 20-2, Dec.).

---

[2] There appears to be a discrepancy in the date that Petitioner filed his first state PCR petition. The Appellate Division had mentioned a June 3, 2000 date as the filing date in its Opinion on appeal from denial of the first PCR petition. See Walker, 2007 WL 4258335, at *2. However, in his response to Judge Sheridan's January 4, 2011, Order to Show Cause, Petitioner attached a copy of his first state PCR petition which is stamped received on December 27, 1999. (D.E. No. 9). It is likely that the June 3, 2000 date refers to the filing of briefs in the state PCR proceeding. In any event, the critical date for statute of limitations purposes in this case is December 27, 1999.

[3] There is no explanation in the state court record regarding the 5½ year delay between the filing of the PCR petition and the oral argument on January 6, 2006.

4

On or about October 2, 2008, twelve years after entry of the judgment of conviction, Petitioner filed his second PCR petition. In an oral decision rendered on October 31, 2008, the court denied the PCR petition as time-barred under N.J. Ct. R. 3:22-12 and for lack of merit. (D.E. No. 23-4, Oct. 31, 2008 Tr. of Dec. 4).[4] Petitioner appealed from denial of his second PCR petition. (D.E. No. 20-1, Jan. 21 2008 Letter Pet. for Certification & App. on Behalf of Def.-Pet'r ("Letter Pet.") 2-7). The Appellate Division affirmed the denial of post-conviction relief on January 6, 2010. (D.E. No. 20-5, Op. 2-3).

---

[4] The transcripts of the state court proceedings are identified as follows:

Ex. 22: D.E. No. 20-6, Mar. 12, 1996 Miranda Hearing/Jury Selection ("1T").
Ex. 23: D.E. No. 21-1, Mar. 13, 1996 Trial Tr. ("2T").
Ex. 24: D.E. No. 21-2, Mar. 14, 1996 Trial Tr. ("3T").
Ex. 25: D.E. No. 21-3, Mar. 15, 1996 Trial Tr. ("4T").
Ex. 26: D.E. No. 21-4, Mar. 18, 1996 Trial Tr. ("5T").
Ex. 27: D.E. No. 21-5, Mar. 19, 1996 Trial Tr. ("6T").
Ex. 28: D.E. No. 21-6, Mar. 20, 1996 Trial Tr. ("7T").
Ex. 29: D.E. No. 22-1, Mar. 21, 1996 Trial Tr. ("8T").
Ex. 30: D.E. No. 22-2, Mar. 22, 1996 (A.M.) Trial Tr. ("9TA").
Ex. 31: D.E. No. 22-3, Mar. 22, 1996 (P.M.) Trial Tr. ("9TB").
Ex. 32: D.E. No. 22-4, Mar. 25, 1996 Trial Tr. ("10T").
Ex. 33: D.E. No. 22-5, Mar. 26, 1996 Trial Tr. ("11T").
Ex. 34: D.E. No. 22-6, Mar. 27, 1996 Trial Tr. ("12T").
Ex. 35: D.E. No. 23-1, Mar. 28, 1996 Trial Tr. ("13T").
Ex. 36: D.E. No. 23-2, Apr. 22, 1996 Plea & Sent'g Hearing Tr. ("14T").
Ex. 37: D.E. No. 23-3, Jan. 6, 2006 PCR Proceeding Tr. ("15T").
Ex. 38: D.E. No. 23-4, Oct. 31, 2008 Order Denying PCR Tr. ("16T").

Also on October 2, 2008,[5] Petitioner filed a petition for habeas relief under 28 U.S.C. § 2254 in No. 08-5064. (D.E. No. 1-1, No. 08-5064, Pet.). On March 5, 2009, a Notice and Order pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), was sent to Petitioner. (D.E. No. 2, No. 08-5064, Notice & Order). On or about March 18, 2009, Petitioner wrote to the Court to inform that he wished to withdraw his § 2254 habeas petition because he had filed a second state PCR petition, which was pending on appeal. (D.E. No. 3, No. 08-5064). Petitioner further stated that he wished to withdraw so that he could exhaust his state court remedies on all claims so that he could later file one, all-inclusive habeas petition. (Id.).

---

[5] Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court. See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir. 1988) (applying prison mailbox rule set forth in Houston, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition). Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition. See Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1988) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition). In his first § 2254 habeas petition, No. 08-5064, Petitioner signed his petition, saying that he placed it in the prison mailing system on October 2, 2008. Therefore, the Court will use that date for statute of limitation purposes, as the date the No. 08-5064 habeas action was filed, rather than the date the petition was received by the Clerk's Office, which was October 14, 2008.

Accordingly, on March 23, 2009, the Honorable Faith S. Hochberg, U.S.D.J., entered an Order deeming the matter withdrawn. (D.E. No. 4, No. 08-5064, Order).

On October 2, 2009, Petitioner filed the instant petition for habeas relief under § 2254, under cover of a letter referring to his first § 2254 habeas action, No. 08-5064, which he had withdrawn pursuant to the March 5, 2009 Mason Order, and asked that his habeas action be "re-filed" as his one, all-inclusive petition. (D.E. No. 1, Pet. 2-9). Rather than re-opening the earlier-filed habeas action, No. 08-5064, the Clerk's Office opened this habeas action under a new docket number, No. 09-5325.[6]

On May 3, 2010, the Honorable Peter G. Sheridan, U.S.D.J., dismissed the habeas petition for non-exhaustion of state court remedies, namely, because Petitioner's second state PCR petition was still pending at that time on state court review. (D.E. No. 2, Op. 5; D.E. No. 3, Order). Petitioner moved for reconsideration of the dismissal, informing the Court that he wished to abandon his claims raised in the second state PCR petition and proceed only on his originally asserted claims in his first § 2254 petition in No. 08-5064. (D.E. No. 4, Notice

---

[6] On June 21, 2011, this matter was reassigned from Judge Sheridan to the undersigned. (D.E. No. 10, Order of Reassignment).

of Mot. for Recons. ("Mot. for Recons.")). In an Opinion and Order entered on January 4, 2011, Judge Sheridan granted Petitioner's motion for reconsideration and re-opened the case. (D.E. No. 7, Op.; D.E. No. 8, Order). However, Judge Sheridan directed Petitioner to show cause in writing why his petition should not be dismissed as time-barred. (D.E. No. 7, Op. 2, 13; D.E. No. 8, Order).

On or about January 28, 2011, Petitioner responded to the Court's Order to Show Cause, alleging that his petition was filed in a timely manner. (D.E. No. 9, Resp. to Order to Show Cause Why Pet. for a Writ of Habeas Should Not Be Dismissed as Time-Barred ("Resp. to OTSC") 1-4). This Court thereafter directed the respondents to answer the petition. (D.E. No. 11, Order 2).

The State filed an answer to the petition, together with the relevant state court record on March 27, 2012. (D.E. No. 17, Answer to Pet. for Writ of Habeas Corpus ("Answer to Pet."); D.E. Nos. 18-23, Resp't Exs.). Petitioner filed a traverse or reply in support of his habeas petition on or about May 16, 2012. (D.E. No. 27, Traverse to Answer to Pet. for a Writ of Habeas Corpus ("Traverse to Answer to Pet.")).

B. Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will reproduce the recitation as set forth in the published opinion of the Superior Court of New Jersey, Appellate Division, decided on June 30, 1999, with respect to Petitioner's direct appeal:

> Defendant and codefendant Andre Williams were indicted for second degree conspiracy, in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; four counts of first degree robbery, in violation of N.J.S.A. 2C:15-1; felony murder during the commission of a robbery, in violation of N.J.S.A. 2C:11-3a(3); purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3; attempted murder, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; aggravated assault, in violation of N.J.S.A. 2C:12-1b(1); possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b; and possession of a handgun with the purpose to use it unlawfully against the person of another, in violation of N.J.S.A. 2C:39-4a. The indictment also charged defendant alone with additional weapons and drug offenses which were severed before trial.
>
> At trial, the State presented evidence concerning four incidents involving a small red car that allegedly occurred in the same general area of Newark within an hour and a half time span in the early morning hours of May 8, 1994. The State's theory was that defendant, codefendant Williams and several other unidentified persons committed a series of robberies during this period, one of which resulted in Darlene Pollenitz's death.
>
> The first robbery, which the State theorized occurred between 12 and 12:30 a.m., was committed upon Paula Alford, who was walking along a Newark street when a car occupied by four men stopped next

to her.  Two men carrying guns jumped out and asked,
"You got any money?"  Alford said no and ran across
the street.  As she ran, Alford heard a man in the
car say, "Shoot the bitch!"  One of the perpetrators
then shot Alford in the buttocks.  More than a year
later, Alford identified defendant from a
photographic array as one of the perpetrators.
However, Alford was unable to identify defendant at
trial, and she repeatedly expressed substantial
uncertainty concerning her prior identification of
his photograph . . . .

The second robbery occurred around 12:35 a.m.,
as Willie McClendon was walking home after eating at
a local restaurant.  When a small red car stopped
near him, two men stepped out and demanded his
wallet.  After McClendon complied with this command,
the men took his wallet and drove away.
Approximately a month and a half after the crime,
McClendon identified both defendant and codefendant
Williams from a photographic array.  McClendon also
positively identified both defendants at trial.

Less than a half hour later, Yamina Brown's car
was struck by a small red car.  After the accident,
the car turned, hit Brown's car a second time and
then drove away.  This accident occurred at a
location only five or six blocks from the site of
the Pollenitz murder.

The third robbery, which resulted in the
Pollenitz murder, occurred between 1:00 and 1:30
a.m.  As Pollenitz, Alberdeen Allen and two other
women approached Pollenitz's car, a red four-door
sedan with a dent on the passenger side pulled in
front of them and stopped.  Two men, armed with
handguns, got out of the car.  The man Allen later
identified as defendant pointed his pistol at her
and one of the other women, and said, "Empty your
pockets."  The women complied with this directive,
and Allen threw her purse on the ground.  At this
point, the other robber's gun went off, firing a
fatal shot into Pollenitz's face. After picking up
Allen's purse and the contents of the victims'
pockets, the men got back into their car and drove
away.

The police's initial investigation of the murder did not produce any useful information concerning the perpetrators. However, after Brown saw an article in a newspaper which described the small red car involved in the crime, she called the investigating officer and told him that a similar car had collided with her car the night of the murder. She also told the officer that the license plate number of the car was either 195-4851 or 195-4841. These license plate numbers together with Brown's description of the car eventually led the police to identify defendant and Williams as suspects.

In addition, several weeks after the murder, Allen received the items taken from her in the robbery wrapped in a newspaper. McClendon's wallet was included with Allen's property. When Allen gave McClendon's wallet to the police, this alerted them to the possible connection between the Pollenitz felony-murder and the McClendon robbery. Thereafter, McClendon identified defendant and Williams from a photographic array as the persons who had robbed him. Allen identified defendant from the same photographic array as one of the persons involved in the Pollenitz felony-murder, but she was unable to identify Williams.

Defendant testified in his own defense and also presented various alibi witnesses.

At the close of the State's case, the trial court dismissed a count of the indictment which charged defendant with the robbery of Pollenitz. However, the jury subsequently found defendant guilty of Pollenitz' felony murder. The jury acquitted defendant of purposeful or knowing murder, but found him guilty of the lesser-included offense of reckless manslaughter. In addition, the jury acquitted defendant of the attempted murder of Alford and found him guilty of second degree robbery of Alford rather than the first degree offense. Defendant was found guilty of all remaining charges, including the McClendon robbery. However, the jury

was unable to reach a verdict with respect to any of
the charges against codefendant Williams.

(D.E. No. 18-6, <u>Walker</u>, slip op. at 2-5).

## II.  <u>STATEMENT OF CLAIMS</u>

Petitioner asserts the following claims in his petition for habeas relief:

**GROUND I**:  The jury charge on identification deprived Petitioner of due process.  (D.E. No. 1, Pet. 5).

**GROUND II**:  Trial counsel was ineffective for failing to challenge the indictment.  (<u>Id.</u> at 6).

**GROUND III**:  Trial counsel was ineffective for delaying his investigation of Petitioner's alibi.  (<u>Id.</u>).

**GROUND IV**:  Trial counsel was ineffective for failing to challenge the State's improper cross-examination and comments on the pretrial silence of alibi witnesses and for not requesting a specific alibi instruction.  (<u>Id.</u> at 7).

**GROUND V**:  Trial counsel was ineffective for failing to call two favorable witnesses.  (<u>Id.</u>).

**GROUND VI**:  The cumulative effect of trial counsel's errors amounted to ineffective assistance.  (<u>Id.</u> at 8).

**GROUND VII**:  Counsel on direct appeal was ineffective.

The State essentially contends that the petition is without merit, or fails to raise a claim of federal constitutional

dimension that would entitle Petitioner to habeas relief. The State also raises the affirmative defense that the action is time-barred. (Id. at 8-9).

## III.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-21 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Thus, because Petitioner is proceeding as a pro se litigant in this matter, the Court will accord his habeas petition the liberal construction intended for pro se petitioners.

Section 2254(a) of title 28 of the United States Code gives this Court jurisdiction to entertain a habeas petition as follows:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"As amended by [the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several

limits on the power of a federal court to grant an application

for a writ of habeas corpus on behalf of a state prisoner."

Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  Section

2254(a) permits a court to entertain only claims alleging that a

person is in state custody "in violation of the Constitution or

laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA further limits a federal court's authority to grant

habeas relief when a state court has adjudicated petitioner's

federal claim on the merits.[7]  See 28 U.S.C. § 2254(d).  If a

claim has been adjudicated on the merits in state court

proceedings, this Court has "no authority to issue the writ of

habeas corpus unless the [state c]ourt's decision 'was contrary

to, or involved an unreasonable application of, clearly

established Federal Law, as determined by the Supreme Court of

---

[7] "[A] claim has been 'adjudicated on the merits in State court
proceedings' when a state court has made a decision that finally
resolves the claim based on its substance, not on a procedural,
or other, ground."  Lewis v. Horn, 581 F.3d 92, 100 (3d Cir.
2009)(quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)).
"Section 2254(d) applies even where there has been a summary
denial."  Cullen, 131 S. Ct. at 1402.  "In these circumstances,
[petitioner] can satisfy the 'unreasonable application' prong of
§ 2254(d)(1) only by showing that 'there was no reasonable
basis' for the [state c]ourt's decision."  Id. (quoting
Harrington v. Richter, 131 S. Ct. 770, 784 (2011)).

14

the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[8] Parker v. Matthews, 132 S. Ct. 2148, 2151 (2012)(quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" Parker, 132 S. Ct. at 2155, and "therefore cannot form the basis for habeas relief under AEDPA." Parker, 132 S. Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the

---

[8] However, "when the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." Lewis 581 F.3d at 100 (quoting Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)).

governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." _Williams_, 529 U.S. at 405–06. "Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." _Williams_, 529 U.S. at 413. However, under § 2254(d)(1), "an _unreasonable_ application of federal law is different from an _incorrect_ application of federal law." _Harrington_, 131 S. Ct. at 785 (quoting _Williams_, 529 U.S. at 410). As the Supreme Court explained:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision . . . . [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

Harrington, 131 S. Ct. at 786 (citations & internal quotation marks omitted).[9]

   "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S. Ct. at 1398 (citations & internal quotation marks omitted).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   Id.

---

[9] See also Wright v. Van Patten, 552 U.S. 120, 126 (2008). ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.")(citation & internal quotation marks omitted).

IV.  ANALYSIS

A.  Statute of Limitations Defense Claim

The State raises the affirmative defense that Petitioner's habeas action should be dismissed as time-barred.  (D.E. No. 17, (Answer to Pet.) 48-50).

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d),[10] which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Pursuant to § 2244(d), evaluation of the timeliness of a § 2254 petition requires a determination of: first, when the pertinent judgment became "final;" and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."

---

[10]  Section 2244(d) became effective on April 24, 1996 when the AEDPA was signed into law.  See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998); Duarte v. Hershberger, 947 F. Supp. 146, 147 (D.N.J. 1996).

A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); Sup. Ct. R. 13.

When a conviction becomes final under § 2244(d), a state prisoner has a one-year grace period within which to file his one all-inclusive habeas petition challenging that judgment. However, that limitations period is tolled during the time a properly filed application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2). An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled, from the time it is "properly filed,"[11] during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 536 U.S. 214, 223 (2002), and through the time in which

_____

[11] An application is "properly filed" if it was accepted for filing by the addressee court and such acceptance occurred within the time limits prescribed by the governing state. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005); see also Artuz v. Bennett, 531 U.S. 4, 8-10 (2000); Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Darden v. Sobina, No. 10-3390, 2012 WL 1418168, at *917-18 (3d Cir. Apr. 25, 2012).

an appeal could be filed, even if the appeal is never filed, Swartz, 204 F.3d at 420-24; see also Evans v. Chavis, 546 U.S. 189, 191 (2006)("The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law."). Nevertheless, § 2244(d)(2) does not toll the one-year statute of limitations during the pendency of a state prisoner's petition for writ of certiorari in the United States Supreme Court. See Lawrence v. Florida, 549 U.S. 327, 332-33 (2007); Stokes v. Dist. Att'y of the Cnty. of Pa., 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

Here, Petitioner's judgment of conviction became final after the enactment of AEDPA. The judgment of conviction was entered on or about April 23, 1996, and Petitioner filed his direct appeal shortly thereafter. On June 30, 1999, the Appellate Division affirmed the conviction,[12] and the New Jersey Supreme Court denied certification on November 9, 1999.

---

[12] As stated previously, the Appellate Division reversed the convictions for the robbery and aggravated assault counts with respect to victim Paula Alford (Counts Two and Nine), but otherwise affirmed the conviction on the remaining counts that were not otherwise dismissed by the trial court or by which Petitioner was acquitted by the jury. (D.E. No. 18-6, Walker, slip op. at 2-5).

Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States. Therefore, Petitioner's judgment of conviction became final 90 days after November 9, 1999, or on February 9, 2000. See Swartz, 204 F.3d at 419; Morris, 187 F.3d at 337 n.1; Sup. Ct. R. 13.

Accordingly, Petitioner had one year from the date on which his judgment of conviction became final under § 2244(d)(1)(A), February 9, 2000, or until February 9, 2001, to timely file his federal habeas petition under § 2254.

To permit tolling of the one-year limitations period under 28 U.S.C. § 2244(d)(2), Petitioner would have had to file his state PCR petition before the one-year period had expired, or before February 9, 2001. Otherwise, the state PCR petition would not serve to toll the statute of limitations. In this case, Petitioner filed his first state PCR petition before his judgment of conviction had become final, and thus, his one-year statutory period did not begin to run and was statutorily tolled during the pendency of his first state court PCR proceedings, and remained tolled until March 25, 2008, when the Supreme Court of New Jersey denied certification on appeal from denial of the first state PCR petition.

At that point, on March 25, 2008, the one-year statutory period began to run, and Petitioner had one year from that date,

or until March 25, 2009, to timely file his federal habeas petition. On October 2, 2008, 189 days after the statute of limitations began to run, Petitioner simultaneously filed a second state PCR petition and his initial § 2254 habeas petition in this district court, in No. 08-5064. (D.E. No. 1, No. 08-5064, Pet.). However, on March 23, 2009, an Order was entered, deeming the initial § 2254 habeas petition withdrawn pursuant to Petitioner's request because his second state PCR petition was pending review in state court. (D.E. No. 4, No. 08-5064, Order).

Before state court review in the second PCR petition concluded on January 6, 2010, when the Appellate Division affirmed the PCR court's denial of post-conviction relief,[13] Petitioner filed this § 2254 habeas petition on or about October 2, 2009. Specifically, in his cover letter to the petition, Petitioner referenced the docket number in his earlier action, No. 08-5064, and asked to re-file his petition for habeas relief. (D.E. No. 1-1, Oct. 8, 2009 Cover Letter). By mistake or oversight, the Clerk's Office docketed the re-filed petition under a new docket number, namely, the instant case, No. 09-5325.

---

[13] Petitioner did not seek certification to the New Jersey Supreme Court with respect to his second state PCR petition.

Thus, the questions for this Court to determine in this statute of limitations analysis is whether this habeas petition, filed on October 2, 2009, relates back to the initial habeas petition withdrawn for exhaustion of state court review, and/or whether the filing of the second PCR petition served to toll the statutory period until its review had concluded on January 6, 2010. A negative finding on both questions would render this petition untimely and subject to dismissal.

The Court first deals with the second question, that is, whether the second state PCR petition tolled the limitations period. Petitioner filed his second state PCR petition on or about October 2, 2008 (the same date that he filed his first § 2254 habeas petition, No. 08-5064). However, that second state PCR petition was dismissed as untimely because it was not filed within the five-year period allowed under N.J. Ct. R. 3:22-12(a). Indeed, the second state PCR petition was filed twelve years after entry of the judgment of conviction in this case, and Petitioner had "failed to show either the 'excusable neglect' or 'exceptional circumstances' required to justify an extension of [the five-year] period." (D.E. No. 20-5, Op. 3). Consequently, because the second state PCR petition was not "properly filed" it does not serve to statutorily toll the

23

limitations in this case.  See Pace, 544 U.S. at 413; Darden, 2012 WL 1418168, at *916-17.

However, in Pace, the Supreme Court observed that, in the event a state prisoner is "reasonably confused" as to whether his state PCR petition would be timely, he could file a protective § 2254 habeas petition.  Pace, 544 U.S. at 416-17. "A prisoner . . . might avoid [dismissal of his federal habeas petition on the grounds of untimeliness] by filing a 'protective' petition in federal court . . . ."  Id. at 416 (citing Rhines v. Weber, 544 U.S. 269, 278 (2005)).  It would appear in this case that Petitioner sought to file a "protective" § 2254 habeas petition as contemplated in Pace, when he filed his second state PCR petition and the § 2254 habeas petition (No. 08-5064) on the same date, October 2, 2008, in the event that the second PCR petition was dismissed as untimely, which it was.

As noted above, Petitioner's first § 2254 habeas petition was timely filed on October 2, 2008, with 176 days remaining on his one-year statute of limitations.  Petitioner nevertheless voluntarily withdrew his federal habeas petition on March 24, 2009, so as to exhaust his state court remedies.  Hindsight on Petitioner's part suggests that he should not have withdrawn his petition, but rather, he should have asked for a stay of the

petition while the second state PCR petition was pending if he was concerned about protecting his rights as the simultaneous filing of the second PCR petition and initial § 2254 habeas petition implies.  Indeed, the Court points out that the state PCR court already had denied the second PCR petition by an oral decision rendered on October 31, 2008, before Petitioner sought to withdraw his § 2254 habeas petition.  Accordingly, because the second PCR petition did not serve to toll the limitations period, the Court now must determine whether equitable tolling would apply to allow Petitioner's "re-filed" § 2254 habeas petition submitted on October 2, 2009.

To overcome the statutory time bar, as explained above, Petitioner would have to provide relevant facts to support relaxation of the time bar by equitable tolling.  Courts have recognized only rare situations for equitable tolling to apply. Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012)(citing Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998)); see also Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way and prevented timely filing." Lawrence, 549 U.S. at 336; Pace, 544 U.S. at 416-17; Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); see also Holland, 130 S. Ct. at 2562 (holding that the one-year limitations period under AEDPA is subject to equitable tolling "in appropriate cases," where the petitioner demonstrates (1) "that he has been pursuing his rights diligently," and (2) that some "extraordinary circumstance stood in his way and prevented timely filing" (quotation marks omitted)).

The Third Circuit instructs that equitable tolling is appropriate when "principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005). "There are no bright lines in determining whether equitable tolling is warranted in a given case." Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011). However, the court cautioned that courts should use the equitable tolling doctrine sparingly, "only in the rare situation where it is demanded by sound legal principles as well as the interest of justice." LaCava, 398 F.3d at 275; see also Sistrunk, 674 F.3d at 190. A mere showing

26

of "excusable neglect is not sufficient" to warrant equitable tolling. LaCava, 398 F.3d at 276; Miller, 145 F.3d at 618-19; Jones, 195 F.3d at 159.

Extraordinary circumstances permitting equitable tolling have been found where: (1) the petitioner has been actively misled; (2) the petitioner has been prevented from asserting his rights in some extraordinary way; (3) the petitioner timely asserted his rights in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir.), cert. denied, 546 U.S. 957 (2005).[14] Even where extraordinary circumstances exist, however, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d

---

[14] The Third Circuit has expressly held that, in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes are not the extraordinary circumstances necessary to establish equitable tolling. Johnson v. Hendricks, 314 F.3d 159, 162-63 (3d Cir. 2002), cert. denied 538 U.S. 1022 (2003); Fahy, 240 F.3d at 244.

Cir.) cert. denied, 539 U.S. 948 (2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

In his response to this Court regarding the possibility of a time-bar, Petitioner explains that he believed that the issuance of the Mason Order in his earlier case, No. 08-5064, served to toll the limitations period from October 2, 2008 through April 22, 2009,[15] and from that point he had the remaining time on his limitations period, 176 days, to re-file his § 2254 habeas petition. (D.E. No. 9, (Resp. to OTSC) 2-3). Petitioner added the 176 days from April 22, 2009, which extended the time to re-file his one all-inclusive petition to October 15, 2009. (Id.). He filed the instant petition on October 8, 2009, when he handed to prison officials for mailing. (Id.).

Considering the above factors, this Court finds that Petitioner has exercised reasonable diligence in pursuing his habeas claims. For instance, Petitioner filed his first state PCR petition before the one-year statutory time period began to run. His first state PCR proceedings concluded on March 25,

---

[15] Petitioner explains that the March 5, 2009 Mason Order issued in No. 08-5064 tolled the limitations period from October 2, 2008 until 45 days after the date of that Order, or April 19, 2009. However, by virtue of the prison mailbox rule, the period was tolled for three days until April 22, 2009, when Petitioner actually received the Mason Order by mail.

2008, and Petitioner had one year from that date within which to file his § 2254 habeas petition. Petitioner timely filed his § 2254 habeas petition about six months (189 days) later on October 2, 2008, well within the one-year limitations period, with 176 days remaining on his statutory period. Moreover, Petitioner simultaneously filed his second state PCR proceeding, which would otherwise serve to toll the limitations period again. So, it is plain that Petitioner was diligent in protecting and pursuing his rights.

The more thorny issue for the Court, however, is whether there were exceptional circumstances present to permit equitable tolling, such as whether Petitioner had been actively misled, prevented from filing his petition in some extraordinary way, or had timely asserted his rights in the wrong forum. In this regard, the Court necessarily questions Petitioner's assumption about the further tolling of his limitations period after receipt of the Mason Order issued in the first action, No. 08-5064. Petitioner alleges that he misunderstood from that Mason Order that his statute of limitations was tolled until April 22, 2009, which includes the 45 days after the Mason Order was issued, even though Petitioner had responded to the Mason Order on or about March 18, 2009, asking that his matter be withdrawn so he could file his one all-inclusive habeas petition. Thus,

while the <u>Mason</u> Order cannot be said to have actually misled or tricked Petitioner from timely pursuing his rights, Petitioner did operate on the belief that he still had 176 days remaining on his limitations period because his filing of the first § 2254 petition would have stopped the running of the limitations period until it was withdrawn.

Generally, miscalculation of the limitations or the remaining time on a limitations period does not constitute extraordinary circumstances to permit equitable tolling. <u>Fahey</u>, 240 F.3d at 244; <u>see also</u> <u>Johnson</u>, 314 F.3d at 161, 163. Moreover, "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." <u>Fisher v. Johnson</u>, 174 F.3d 710, 714 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 1164 (2001). Courts have been loathe to excuse late filings simply because a pro se prisoner misreads the law. <u>Delaney v. Matesanz</u>, 264 F.3d 7, 15 (1st Cir. 2001)("While judges are generally lenient with pro se litigants, the Constitution does not require courts to undertake heroic measures to save pro se litigants from the readily foreseeable consequences of their own inaction."); <u>see also</u> <u>Schlueter v. Varner</u>, 384 F.3d 69, 76 (3d Cir. 2004)("attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation" in a non-capital case); <u>Jones</u>, 195 F.3d at

159-60.  Thus, Petitioner's own ignorance of the law normally would be unavailing to warrant equitable tolling.

Nevertheless, to his detriment, Petitioner relied on the fact that his initial timeliness in filing the first § 2254 petition would have protected his rights while he exhausted his state court remedies.  Under Rhines v. Weber, 544 U.S. 269 (2005), had Petitioner asked to stay his first petition while he exhausted his state court remedies, he would have protected his rights and avoided a time-bar ruling.  Petitioner explains that this was his purpose in filing both his § 2254 petition and his second state PCR petition simultaneously.

Moreover, Petitioner expressed the intent that he was "re-filing" his § 2254 petition and actually referred to the docket number of his first action, No. 08-5064.  His petition was unchanged from the initial application as the second state PCR was dismissed as untimely.  Inexplicably, however, despite his reference to the No. 08-5064 action, the "re-filed" petition was docketed as a new case.  Thus, the instant petition contains the same claims, and no new ones, that were included in Petitioner's first, timely filed petition in No. 08-5064.  In this regard, this Court finds that it would be appropriate to rule the instant petition as relating back to the initial petition in No. 08-5064, making this matter timely.  Petitioner's actions

throughout the review process in both state and federal court shows his diligent concern for protecting his rights.

Therefore, based on the reasonable confusion engendered by the <u>Mason</u> Order, the error in docketing this matter as a new habeas action rather than a re-submission of the earlier action, No. 08-5064 as indicated by Petitioner, and Petitioner's diligence in pursuing his claims, the Court finds that equitable tolling is proper under the circumstances, and this petition will be deemed as timely filed. The Court now turns to merits of Petitioner's claims for habeas relief.

D.  <u>Jury Charge on Identification</u>

In Ground One of his petition, Petitioner argues that the jury charge on the issue of identification deprived him of due process. (D.E. No. 1, Pet. 5-6). He argues that, at trial, identification was a critical issue where the state's witnesses' identification testimony conflicted from one another, conflicted with Petitioner's physical characteristics, and conflicted with the information that each had given to the police. (<u>Id.</u>). Despite these crucial differences or conflicts, the trial court failed to tailor its instruction to the jury to include the inconsistencies in the various identification testimonies. (<u>Id.</u>).

This issue was raised on Petitioner's direct appeal. The Appellate Division discussed the issue at length in its June 30, 1999 Opinion, and rejected Petitioner's claim as follows:

. . . because general and special credibility instructions relate to the jury's performance of its fact-finding responsibilities, the prosecutor and defense counsel may comment at length in their summations regarding the criteria applicable to the jury's evaluation of the witnesses' credibility. Therefore, in determining whether a trial court's failure to give a special credibility instruction constitutes reversible error, a reviewing court must consider not only the entire trial record, including the cross-examination of any witness whose testimony calls for a special credibility instruction, but also the prosecutor's and defense counsel's summations. See State v. Harris, 156 N.J. 122, 178-82 (1998); see also State v. Morton, 155 N.J. 383, 423 (1998); State v. Cooper, 151 N.J. 326, 380 (1997); State v. Gartland, 149 N.J. 456, 473-74 (1997); State v. Maldonado, 137 N.J. 536, 575-76 (1994).

Due to the significant differences between a trial court's roles in explaining the applicable law and in providing guidance to the jury concerning its fact-finding responsibilities, and because many of the legal concepts which a jury is required to apply are more complicated conceptually than evaluation of witness credibility, there is a greater need in explaining the applicable law than in guiding the jury's fact-finding to relate jury instructions to the facts of the case. For example, in State v. Concepcion, 111 N.J. 373 (1988), the Court concluded in a case arising out of an alleged accidental shooting that "the trial court may have misled the jury and influenced it to return a guilty verdict" by simply repeating the model jury charges relating to reckless manslaughter and referring to only one aspect of the defendant's conduct relevant to this charge. Id. at 381. The Court indicated that the trial court also should have referred to defendant's other conduct relevant to his state of mind and

33

instructed the jury "to evaluate the state of mind defendant possessed throughout the entire sequence of relevant events." Id. at 380. The Court also observed that "[o]rdinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." Id. at 379. However, even a trial court's failure to relate its explanation of the applicable law to the specific facts of the case will not be found to be reversible error if a reviewing court concludes that the model jury instruction adequately explained the law, especially in the absence of any objection at trial. See, e.g., Morton, supra, 155 N.J. at 421-23; Cooper, supra, 151 N.J. at 379-81; Maldonado, supra, 137 N.J. at 576-78.

The requirement that a trial court give the jury a special instruction regarding identification testimony derives from Green, supra.[16] The Court in that case held that because identification was the key issue, it was reversible error for the trial court not to give an instruction which specifically addressed the jury's evaluation of identification testimony. 86 N.J. at 291-92. The Court concluded that the jury should have been instructed that "it was the State's burden to prove beyond a reasonable doubt that it was defendant who had raped [the victim], that it was not defendant's burden to prove that he was elsewhere when the offense occurred, and that the State's case depended on the eyewitness identification by [the victim], setting forth the respective factual contentions relative to her descriptions." Id. at 293. In addition, the Court noted that the trial court "could have used as a guide the Model Jury Charge." Ibid.

In this case, the trial court complied with Green by providing the jury with a special instruction concerning the victim['s] identifications of defendant and codefendant which closely tracked the Model Jury Charge on witness identification. The court specifically instructed

---

[16] State v. Green, 86 N.J. 281, 293-94 (1981).

the jury, in conformity with <u>Green</u>, 86 <u>N.J.</u> at 293, that:

> Where the identity of the person who committed the offense is in issue, the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that this particular defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that any crime, if committed, was committed by someone else, or to prove the identity of that other person.

The court also informed the jury that in determining whether the State had proven beyond a reasonable doubt that a defendant was the person or one of the persons who had committed the crimes charged:

> [Y]ou should consider the testimony of the witnesses in light of customary criteria concerning credibility that I have explained to you. It is particularly appropriate that you consider the capacity or ability of the witness to make observations, or perceptions as you gauge it to be; and that you consider the opportunity which the witness had at the time and under all the attendant circumstances for seeing that which he or she says he or she saw, or that which he or she says he or she perceived with regard to his or her identification of the person who committed the alleged offense.

> Unless the in-court identification results from the observations or perceptions of the defendant by the witness during the commission of the crime, rather than being the product of an impression gained at an out-of-court identification procedure, it should be afforded no weight.

The only deficiency in the court's identification instruction was its failure to refer to the specific victim identifications to which the instructions applied. The court referred to those identifications only in general terms, without indicating which defendant or defendants each victim had identified:

> In order to meet its burden with respect to identification of the culprit, the State has presented the testimony of the various witnesses with regard to various counts, that is Paula Alford, William McClendon, Alberdeen Allen. They all testified. You will recall the witnesses identified a defendant, or both defendants, depending upon what was said or done here in the courtroom as the person who committed the particular offense.

However, defendant did not object to this omission at trial, and we are satisfied that it did not constitute plain error. R. 2:10-2; see State v. Salaam, 225 N.J. Super. 66, 69-72 (App. Div. 1988). Defense counsel probably concluded that the trial court's failure to refer to the specific identifications to which the victims testified at trial was inconsequential, because defense counsel and the prosecutor had discussed those identifications at length in their summations. Indeed, defense counsel could have concluded that defendant would benefit from the court's failure to remind the jury that two of the three victims who testified, including Allen, who was one of the victims in the incident resulting in Pollenitz' murder, had positively identified him in court. In any event, it is highly unlikely that a jury which sat through a two-and-a-half week trial in which the primary evidence was victim identification testimony, and then heard summations which discussed those identifications at length, was unaware of the specific identifications covered by the identification instruction. Cf. Maldonado, supra, 137 N.J. at 575.

We turn next to defendant's argument that the trial court was required not only to give the special identification instruction approved in <u>Green</u> but also to summarize the inconsistencies between the victims' in-court identifications of the defendants and their descriptions of the perpetrators shortly after the crimes. Defendant argues that such an instruction was required to "ensure[] that the jury maintained an inexorable focus on the description each victim gave the police immediately after the robberies –– when a witness' memory would be most vivid" and "would have automatically illustrated the discrepancies between the descriptions the victims gave of the men who had robbed them."

However, <u>Green</u> does not require a trial court to comment upon the evidence in the manner urged by defendant. There is a significant difference between a court "explain[ing] the law in the context of the facts of the case," <u>Cooper</u>, <u>supra</u>, 151 <u>N.J.</u> at 380, and a court commenting upon the credibility of evidence. In <u>State v. Biegenwald</u>, 106 <u>N.J.</u> 13, 44 (1987), the Court noted that there is "no authority . . . standing for the principle . . . that a court is compelled to . . . comment [upon the evidence], "and that "[o]rdinarily, . . . trial courts comment on evidence only sparingly, if at all, the better to assure that the ultimate determination of facts is made by the jury." The identification instruction which defendant contends the trial court should have given the jury, consisting of a discussion of inconsistencies and other weaknesses in the State's identification evidence, would have constituted a critical commentary upon that evidence, rather than simply an explanation of the law in the context of the facts of this case. Furthermore, if the court had undertaken to point out the inconsistencies between the victims' descriptions of the perpetrators immediately after the crime and their in-court identifications, it also would have been required, in the interests of fairness, to mention the State's explanations for those inconsistencies.

Although it is extremely important for a jury to be made aware of any inconsistencies in the State's identification testimony in order to properly evaluate its reliability, our judicial system confers this responsibility upon defense counsel rather than the trial court. In this case, defendant's trial counsel properly discharged this responsibility by vigorously cross-examining the victims who identified defendant as one of the perpetrators as well as the police officers who interviewed them after the crimes, and carefully pointing out in summation the inconsistencies between the victims' initial descriptions of the perpetrator later identified as defendant and defendant's actual physical characteristics. The trial court was not obligated to supplement this defense presentation by the form of commentary upon the evidence as urged by defendant.

Finally, we reject defendant's argument that State v. Edmonds, 293 N.J. Super. 113 (App. Div. 1996), certif. denied, 148 N.J. 459 (1997), requires a trial court to comment upon inconsistencies between a victim's in-court identification of a defendant and his or her prior descriptions of the perpetrator. Under the circumstances of that case, the court concluded that the trial court's identification instruction was "misleading" because it referred to the inculpatory part of the victim's identification testimony without also referring to the exculpatory part. Id. at 118. However, the panel which decided that case did not say that a trial court is required to comment upon any inconsistencies between a witness' in-court identification of the defendant and any prior description or identification of the alleged perpetrator. Moreover, none of this court's other decisions involving the special identification instruction approved in Green indicate that such an instruction must include judicial comment concerning any inconsistencies or other weaknesses in the State's identification testimony. See State v. Green, 312 N.J. Super. 456, 461-65 (App. Div.), certif. denied, 156 N.J. 425 (1998); State v. McNeil, 303 N.J. Super. 266, 271-75 (App. Div. 1997); State v. Middleton, 299 N.J. Super. 22, 32-33

(App. Div. 1997); <u>Salaam</u>, <u>supra</u>, 225 <u>N.J. Super.</u> at 69-72; <u>State v. Frey</u>, 194 <u>N.J. Super.</u> 326, 329-30 (App. Div. 1984); <u>cf.</u> <u>State v. White</u>, 158 <u>N.J.</u> 230, ___ (1999)(slip op. at 27-28).

    In sum, we conclude that the trial court was not required to comment upon inconsistencies or other weaknesses in the State's identification testimony. The court was only required to inform the jury of the recognized problems of eyewitness identification testimony by giving the standard identification instruction approved in <u>Green</u>. We also conclude that the court's failure to refer to the specific identification testimony governed by this instruction did not constitute plain error.

(D.E. No. 18-6, <u>Walker</u>, slip op. at 12-19).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . . , we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted); see also Smith v. Spisak, 558 U.S. 139 (2010)(no right to habeas relief if Supreme Court has not previously held jury instruction unconstitutional for same reason); Waddington v. Sarausad, 555 U.S. 179 (2009).

The United States Court of Appeals for the Third Circuit has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." Id. As the Third Circuit explained:

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. See McMillan v.

Pennsylvania, 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).

It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate [sic] law with respect to the elements of an offense and defenses to it.

Id.

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] . . . is plainly inconsistent with the constitutionally rooted presumption of innocence . . . ." Cool v. United States, 409 U.S. 100, 104 (1972); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused); Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998)(The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law.").

"[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994). As the Supreme Court explained in Victor, "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof". Id. at 5. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." Id. (citations & internal quotation marks omitted). "[A] misdescription of the burden of proof . . . vitiates *all* the jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (emphasis in original). Such an error is considered

structural and thus is not subject to harmless error review. See id. at 280-82. But see Neder v. United States, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

In this case, the Appellate Division amply supported its determination that the jury instruction given by the trial court regarding the identification testimonies of the various witnesses/victims did not constitute plain error. This Court has carefully reviewed the jury instructions as a whole, as well as the identification instructions at issue, together with the trial record, and likewise finds no error of constitutional dimension in this case. Assessed in its entirety, the language used by the trial court in its fairly comprehensive charge on the applicable law and credibility criteria concerning identification testimony safeguarded, with adequate fairness, Petitioner's due process rights. Further, any deficiencies in the jury instructions as noted by the Appellate Division were simply harmless error and were not capable of producing an unjust result. See, e.g., Williams v. Beard, 637 F.3d 195, 223 (3d Cir. 2011)("[E]ven if the trial court's accomplice liability charge was in some respect ambiguous, there is no reasonable likelihood that the jury applied the instruction in a manner that relieved the Commonwealth of its burden of proof with

respect to first degree murder."). Additionally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977). In short, the trial court's charge to the jury on identification testimony was proper and did not have the capacity to affect the verdict in any substantial or injurious way or prejudice Petitioner in any way. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993).

Therefore, having carefully reviewed the jury charges as a whole, this Court finds that Petitioner was not deprived of a fair trial by the overall jury instructions given, and any error as asserted by Petitioner in this regard was, at the very most, plainly harmless in light of the overall record. Moreover, the Appellate Division's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on this claim.

E. <u>Ineffective Assistance of Counsel</u>

The remaining claims in the petition assert various grounds of ineffective assistance of trial counsel as well as an ineffective assistance of appellate counsel claim. (D.E. No. 1, Pet. 6-9). Specifically, Petitioner alleges that (a) trial counsel was ineffective for failing to challenge the indictment;

(b) trial counsel was ineffective for delaying his investigation of Petitioner's alibi; (c) trial counsel was ineffective for failing to challenge the State's improper cross-examination and comments on the pretrial silence of alibi witnesses and for not requesting a specific alibi instruction; (d) trial counsel was ineffective for failing to call two favorable witnesses; and (e) that the cumulative effect of trial counsel's errors amounted to ineffective assistance. (Id.). Petitioner also alleges that his appellate counsel on direct appeal was ineffective because he failed to challenge the trial court's identification instruction, the prosecutor's misconduct before the grand jury, and the State's improper cross-examination and comments regarding the pretrial silence of alibi witnesses. (Id.).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.

§ 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland.

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. The defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)(citing Strickland, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" Id. (citing Strickland, 466 U.S. at 688).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S. Ct. at 787-88 (2011)(citing Strickland, 466 U.S. at 687, 693). As the Supreme Court explained:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland,

466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Further, due process requires that a defendant have competent representation both at trial and in a first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985)("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). Appellate counsel, however, is not required to raise every non-frivolous issue on appeal but rather can and should make professional judgments regarding the issues most likely to prevail. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Thus, demonstrating that a non-frivolous issue was not raised is insufficient to meet Strickland's standard for ineffective assistance. As with trial counsel, Petitioner must show both that appellate counsel was inept and that, but for counsel's unprofessional errors, the result would have been different. Strickland, 466 U.S. at 687.

In the instant case, Petitioner presented his ineffective assistance of counsel claims in his first state PCR petition. A hearing was conducted before Judge Fullilove on January 6, 2006. (D.E. No. 23-3, Jan. 6, 2006 PCR Tr.). In a written decision and order issued on March 8, 2006, Judge Fullilove rejected Petitioner's claims.[17] Petitioner appealed and the Appellate Division affirmed denial of post-conviction relief after applying the two-part test delineated in Strickland, and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987). (D.E. No. 19-6, Dec. 6. 2007 Op. 10-11). The Appellate Division opined as follows:

> Given the lack of facts to substantiate defendant's allegations here, we agree with the PCR judge that an evidentiary hearing was not required. Defendant's allegations were for the most part unsupported and speculative, so as not to constitute a prima facie claim of ineffective assistance of counsel to require an evidentiary hearing.
>
> III.
>
> We begin with defendant's claim that trial counsel was ineffective for failing to object to the State's cross-examination of his alibi witnesses. The State attacked the witnesses' credibility based on their pre-trial silence - their failure to come forward and provide alibis for defendant sooner than they did. An alibi witness's pre-trial silence may be

---

[17] Inexplicably, the State failed to provide this Court with a copy of the state PCR court's March 8, 2006 letter decision and order. Reference to the decision was made in the Appellate Division's December 6, 2007 Opinion on appeal from denial of the first state PCR petition.

cross-examined by the prosecution as a prior inconsistent statement after the prosecution lays a proper foundation.  State v. Silva, 131 N.J. 438, 447 (1993).  A proper foundation is laid where the witness testifies that he was "aware of the nature of the charges against the defendant, had reason to know he had exculpatory information, had reasonable motive to act to exonerate the defendant, [and] was familiar with the means to make the information available to law enforcement authorities[.]" Id. at 447-48 (internal quotations omitted).  It may generally be inferred that the witness would know how to report the information to law enforcement authorities.  See State v. Holden, 364 N.J. Super. 504, 513 (App. Div. 2003)("seventeen-year-old high school senior would probably know how to report police misconduct").  Here, though the State could have laid a more concrete foundation for cross-examination of defendant's alibi witnesses, the foundation was adequate and defense counsel was not ineffective for failing to object.

The first alibi witness was Maalika Hudson, a friend of defendant's who had known him for two and one-half years.  She testified she knew about the charges against defendant approximately eleven months before telling his lawyer, even though she knew she had information that could exonerate him of the charges.  As defendant's friend, she had a motive to exonerate him; she was aware of the charges against him and she knew of potentially exculpatory information.  She could have provided the authorities with that information had she so desired, before being contacted by defense counsel.

Sandy Lynn was also a friend of defendant; she had known him for six years.  Within weeks of his arrest, she knew she had been arrested, and was aware that she had potentially exculpatory information, yet she failed to come forward.

Similarly, defendant's girlfriend, Linda Horn, testified that she had been dating him for three and one-half years, she was aware that she possessed potentially exculpatory information, and in fact she had contacted authorities about defendant's alibi;

specifically, she told the arresting police officer on the day defendant was arrested, as well as on a subsequent occasion when the officer came to her house.

Given this testimony, the foundation for cross-examination of defendant's alibi witnesses was adequate. And significantly, the State could have cured any deficiencies in its foundation testimony had defendant made timely objection; thus, the outcome of the trial would not have changed. Accordingly, neither trial counsel's failure to object to the cross-examination nor appellate counsel's failure to raise that issue support defendant's ineffective assistance of counsel claims.

It is also notable that the alibi witnesses were cross-examined not just on their pre-trial silence, but also as to their inconsistent testimony. For example, in his statement to the police, defendant stated that Al Tarik Horn was with the group when they went skating, though none of the alibi witnesses testified that he was present. Hudson testified that a total of six people were in the group that went skating; Lynn and Linda Horn testified that there were five. They were all cross-examined on their bias as friends of defendant. Ultimately, the jury likely found them not credible in light of the testimony of the State's witnesses who identified the defendant.

Defendant also argues that the failure of trial counsel to contact the alibi witnesses sooner, and file the notice of alibi earlier, constituted ineffective assistance of counsel. That argument is speculation. Defendant was arrested on June 8, 1994. His attorney's investigator interviewed three witnesses on April 4 and 5, 1995, and defendant provided his notice of alibi to the State on May 4, 1995. Though defendant's May 23, 1994, statement to the police mentions the first names of several alibi witnesses, it does not include their last names or addresses. Indeed, nothing in the record indicates when defendant first notified trial counsel of the names and addresses of these witnesses. Thus, the

record does not contain facts to support a conclusion that trial counsel delayed in contacting the alibi witnesses.

Defendant claims that trial counsel failed to call "two other favorable witnesses," Al Tarik Horn and Temel Sinclair. He asserts that their testimony would have exculpated him and inculpated Andre Williams, his co-defendant, for the crimes because it would have linked Williams to the car.[18] The PCR court, directing its discussion to Horn, found that defendant's claims were unfounded because he provided no facts to support his claims, just "bare allegations, unsupported by credible evidence." The court also found that the failure of counsel to call Al Tarik Horn was not deficient because the witness's proposed testimony would only have concerned ownership of the car; it would not have changed the outcome of the trial because the question the jury was required to determine was whether defendant was in the car on the night in question, not whether he owned it.

The same can be said as to the proposed testimony of Temel Sinclair. Based on his May 24, 1994 statement to police, his testimony may have linked Al Tarik Horn and Troy Williams to the car, but it would not have impacted whether defendant was in the car during the commission of the crimes.

Defendant claims counsel was ineffective because he failed to sufficiently communicate with him. Frequency of communication with defense counsel does not determine whether a defendant has been denied effective assistance of counsel; rather, what is relevant is "whether . . . counsel was able properly to investigate the case and develop a reasonable

---

[18] On appeal, defendant offers a letter Horn wrote to him dated with a partially indiscernible postmark in 1994. The State asserts that the letter was not part of the record before the PCR court. Even assuming the letter is part of the record, it provides no support for defendant's argument. The letter is primarily personal in nature, excepting several inadmissible hearsay statements regarding his incarceration and guilt.

defense." State v. Savage, 120 N.J. 594, 617 (1990).

Trial counsel met with defendant on several occasions, and had an investigator take statements and interview three alibi witnesses whose names were provided to him by defendant. Defendant does not argue that the alibi defense strategy itself was deficient, but that it was improperly implemented by counsel not investigating all possible witnesses. We reject that argument. Defendant has not demonstrated that counsel failed to either properly investigate or provide defendant with a reasonable defense.

Defendant's remaining arguments are without merit to warrant additional discussion. R. 2:11-3(e)(2). We add only the following. The prosecutor did not commit misconduct by failing to provide exculpatory testimony. The grand jury is not an adjudicative body, but is an accusatory body. State v. Hoagland, 114 N.J. 216, 235 (1996). The State is not required to provide exculpatory evidence to the grand jury unless that evidence is "so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the accused." Id. at 236. No such exculpatory evidence was extant here.

(D.E. No. 19-6, Dec. 6, 2007 Op. 11-17).

As the record reveals, the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims. With respect to Grounds Three and Four of the petition, relating to Petitioner's claim that trial counsel was ineffective for delaying his investigation of alibi witnesses and for failing to challenge that State's cross-examination and comments on the pretrial silence of the alibi witnesses, the

state courts ultimately ruled that Petitioner failed to show prejudice, namely, that the outcome of the trial would have been different. As noted above, the Appellate Division found that the State had laid an adequate foundation for cross-examining the alibi witnesses on their pretrial silence. Further, the Appellate Division observed that the alibi witnesses also were cross-examined on their inconsistent testimony and bias, and that ultimately, the jury likely found them less credible than the State's witnesses who had identified Petitioner.

The state courts also determined that trial counsel was not deficient with regard to the alleged delay in investigating the alibi witnesses, observing that Petitioner's argument was pure speculation. "Speculation is not enough under the AEDPA. The [Appellate Division's] determination must necessarily be unreasonable." Brown v. Wenerowivcz, 663 F.3d 619, 634 (3d Cir. 2011). Further, there was simply no demonstration of deficient performance by counsel on this claim that would have had any effect of undermining the verdict.

As to the claim that trial counsel was ineffective for failing to call two witnesses, Al Tarik Horn and Temel Sinclair, (Ground Five), the state courts again found Petitioner's arguments to be speculative, and to be just "bare allegations, unsupported by credible evidence." (D.E. No. 19-6, Dec. 6, 2007

Op. 15).  The Appellate Division further noted that counsel was

not deficient in failing to call these two witnesses because

their proposed testimony related merely to ownership of the car

and would not have affected the outcome of trial as the crucial

issue was whether Petitioner was in the car on the night in

question, not whether he owned it.  Thus, where State witnesses

identified Petitioner, Petitioner did not prevail in showing the

prejudice prong under Strickland.  (Id. at 15-16).  Indeed,

Strickland places the burden on Petitioner, not the State, "to

show a 'reasonable probability' that the result would have been

different."  Wong v. Belmontes, 130 S. Ct. 383, 390-91 (2009).

Here, Petitioner has not met that burden in light of the

speculative nature of his claims.

     As the Supreme Court has made clear, AEDPA imposes a

"highly deferential standard for evaluating state-court rulings,

and demands that state-court decisions be given the benefit of

the doubt."  Renico v. Lett, 130 S. Ct. 1855, 1862

(2010)(citation & quotation marks omitted).  Accordingly, under

AEDPA, this Court's task is only to determine whether the state

court's adjudication of Petitioner's Strickland claims:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal Law, as determined by the
> Supreme Court of the United States; or (2) resulted
> in a decision that was based on an unreasonable

determination of the facts in light of the evidence
presented in the State court proceeding.

28 U.S.C. § 2254(d).

In this case, as demonstrated above, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Therefore, Petitioner's claims of ineffective assistance of counsel as argued in Grounds Three, Four and Five of his petition, will be denied for lack of substantive merit.

Next, in Ground Two, Petitioner asserts that trial counsel was ineffective for failing to challenge the indictment on the argument that the prosecutor failed to present the grand jury with the statements of Petitioner's alibi witnesses. (D.E. No. 1, Pet. 6). The Appellate Division found this argument to be without any merit to warrant discussion. (D.E. No. 19-6, Dec. 6, 2007 Op. 16-17). This Court further finds that Petitioner's argument fails to set forth a claim of a federal constitutional deprivation.

Generally, deficiencies in state grand jury proceedings are not grounds for relief under § 2254.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  This conclusion flows from United States v. Mechanik, 475 U.S. 66 (1986), in which the Supreme Court held that a violation of Fed. R. Crim. P. 6(d), which governs who may be present while the grand jury is in session, deliberating, or voting, discovered only at trial, did not justify relief after the petit jury had rendered its verdict.

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

Mechanik, 475 U.S. at 70 (footnote omitted); see also United States v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993)(with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial misconduct before the indicting grand jury)(citing Vasquez v. Hillery, 474 U.S. 254, 260-62 (1986)).  Thus, to the extent there were any deficiencies in the grand jury proceedings, they must be considered harmless.

Moreover, as the State remarks in its answer to the petition, the grand jury was, in fact, made aware of Petitioner's alibi evidence but still chose to indict

petitioner.    Further, even if the Court were to assume that trial counsel was deficient in failing to challenge the indictment on this ground, the trial jury was fully informed at trial as to Petitioner's alibi witnesses and defense, and determined that their testimony was not credible, convicting Petitioner.    Under these circumstances, Petitioner cannot show prejudice under <u>Strickland</u> with respect to Ground Two of the petition.    Therefore, habeas relief on Ground Two likewise will be denied.

Next, with respect to trial counsel, Petitioner argues that the cumulative effect of all of the alleged errors deprived him of a fair trial.    The test for a "cumulative error" claim[19] is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process."    <u>See</u> <u>Hein v. Sullivan</u>, 601 F.3d 897, 917 (9th Cir. 2010)(relying on <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643

---

[19] The language of <u>Strickland</u> implies that, while alleged errors may not individually be deficient performance of counsel or prejudicial to the defense, the errors may be deficient performance of counsel or prejudicial when combined.    <u>See</u> <u>Strickland</u>, 466 U.S. at 687 (referring to analyzing errors, in plural, in the standard for ineffective assistance of counsel— showing that counsel's performance was deficient "requires showing that counsel made *errors* so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and showing the deficient performance prejudiced the defendant "requires showing that counsel's *errors* were so serious as to deprive the defendant of a fair trial" (emphases added)).

(1974)); <u>Thornburg v. Mullin</u>, 422 F.3d 1113, 1137 (10th Cir. 2005)(relying on <u>Donnelly</u>, 416 U.S. at 643); <u>see also</u> <u>Fahy v. Horn</u>, 516 F.3d 169, 205 (3d Cir. 2008)("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

As discussed above, Petitioner raised his cumulative error claim in his state PCR proceedings. Because the PCR court found no merit to any of Petitioner's claims for post-conviction relief, there is likewise no basis or merit for habeas relief based upon an alleged accumulation of errors that did not exist.

Finally, this Court finds no merit to Petitioner's claim that appellate counsel was ineffective (Ground Seven). The issue of the identification instruction was argued and rejected by the Appellate Division on direct appeal. <u>See</u> <u>supra</u>, at § D, pp. 32-44. Additionally, as to the claims that appellate counsel was ineffective for failing to raise the issues concerning the prosecutor's failure to present Petitioner's alibi defense to the grand jury and to challenge the State's cross-examination of Petitioner's alibi witnesses, this Court already has determined that trial counsel did not provide ineffective representation on these grounds. In fact, the

Appellate Division rejected Petitioner's claims of ineffective appellate counsel. Therefore, Petitioner's claim that appellate counsel was ineffective (Ground Seven) will be denied for lack of merit.

In sum, this Court finds that the New Jersey courts' rejection of Petitioner's ineffective assistance of counsel claims, as set forth above, was not contrary to, or an unreasonable application of Strickland and its progeny, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Therefore, the Court will deny federal habeas relief on theses ineffective assistance of counsel claims because they are substantively without merit.

V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. See 3d Cir. LAR 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by

Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue. An appropriate Order follows.

*s/ Esther Salas*
HON. ESTHER SALAS
United States District Judge